IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARCO DI GIUSTINO, | ) | CIVIL NO. 16-00192 LEK-KSC |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION TO RECUSE |
| vs. | ) | |
| | ) | |
| SMARTECARTE COMPANY, INC.; | ) | |
| JEFF CHEN, Manager; CARL | ) | |
| ZUETERMEISTER, Assistant | ) | |
| Manager; JEFF CHAN, Assistant | ) | |
| General Manager; JOHN DOES 1- | ) | |
| 5, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION TO RECUSE

Before the Court is *pro se* Plaintiff Marco Di

Giustino's ("Plaintiff") Motion to Recuse,[1] filed January 26,

2018.  The Court finds this matter suitable for disposition

without a hearing pursuant to Rule 7.2(d) of the Local Rules of

Practice for the U.S. District Court for the District of Hawaii.

After careful consideration of the parties' submissions

and the applicable law, the Court HEREBY DENIES the Motion for

the reasons set forth below.

---

[1]  Plaintiff continues to violate the Local Rules.  Not only
does the formatting of his documents fail to comply with the
Local Rules, Plaintiff did not file a Reply to his Motion.
Plaintiff is expected to adhere to all applicable rules and
statutes notwithstanding his *pro se* status.  Local Rule 83.13.
Failure to do so may result in the imposition of sanctions,
including but not limited to dismissal of this action.

On April 22, 2016, Plaintiff initiated this action.

On November 1, 2017, the Court held a settlement conference.  The parties did not reach an agreement.

At the December 15, 2017 hearing on Defendants Smarte Carte, Inc., Jie "Jeff" Chen, Carl Zuttermeister, and Ho Yeung "Gary" Chan's[2] (collectively "Defendants") Motion to Continue Trial Date and Extend Rule 16 Scheduling Order Deadlines, the Court held a discussion regarding discovery.  The Court extended Plaintiff's deadline to respond to discovery requests until January 16, 2018, and directed the parties to schedule Plaintiff's deposition in mid-February 2018.

On January 26, 2018, Plaintiff filed the present Motion.  On January 29, 2018, the Court issued the following Entering Order:

> On 1/26/18, pro se Plaintiff filed a document entitled "Demand for Motion to Recuse."  Although Plaintiff references sections 144 and 455 of Title 28 of the U.S. Code, § 144 requires submission of "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  The declaration must "state the facts and the reasons for the belief that bias or prejudice exists." Id.  Plaintiff is ORDERED to clarify whether he is seeking recusal pursuant to § 144 by 2/12/18.  If so, he must comply with § 144's requirements and certify that his Motion is brought in good faith.

---

[2]  Defendants are incorrectly identified in the Complaint and/or and caption.

> If Plaintiff fails to do so, this Court, as opposed to the district judge, will apply § 455 and determine whether recusal is warranted.

Doc. No. 40. Plaintiff did not respond and did not comply with 28 U.S.C. § 144.

## ANALYSIS

Plaintiff seeks recusal of the undersigned. Plaintiff sets forth a number of accusations under headings that misrepresent and reflect his fundamental misunderstanding of these proceedings. There being significant incongruity between Plaintiff's headings and the allegations thereunder, the Court focuses solely on the factual charges asserted by Plaintiff.[3]

---

[3] Plaintiff's largely irrelevant headings are as follows:

I. The Judge made comments to the Jury reflecting Bias about the case

II. The Judge abused his Authority involving Payment of a Settlement

III. The Judge made Remarks during Court Proceedings that Disparaged the Litigants and Counsel

IV. The Judge demeaned a Potential Jury

V. The Judge made Comments that appeared to Criticize the Jury

VI. The Judge proceeded without appointed Counsel despite the Defendant's statements that he wanted Counsel with the Judge further making comments that Disparaged the Defendant's version of the case and fostered the Appearance that the Judge was attempting to pressure the Defendant into Pleading Guilty

Mot. at 3-5.

A.    28 U.S.C. § 455

        Insofar as Plaintiff failed to comply with § 144, the

Court applies § 455.  Section 455(a) requires a judge to

"disqualify himself in any proceeding in which his impartiality

might reasonably be questioned."  28 U.S.C. § 455(a).

Disqualification is also required under § 455(b) where a judge

"has a personal bias or prejudice concerning a party, or personal

knowledge of disputed evidentiary facts concerning the

proceeding" and "[w]here in private practice [the judge] served

as lawyer in the matter in controversy, or a lawyer with whom he

previously practiced law served during such association as a

lawyer concerning the matter, or the judge or such lawyer has

been a material witness concerning it."[4]  28 U.S.C. § 455(b)(1)-

(2).

        Motions to recuse are "addressed to, and must be

decided by, the very judge whose impartiality is being

questioned."  In re Bernard, 31 F.3d 842, 843 (9th Cir. 1994)

(citations omitted).  "[A] judge has 'as strong a duty to sit

when there is no legitimate reason to recuse as he does to recuse

when the law and facts require.'"  Clemens v. U.S. Dist. Court

for Cent. Dist. of Cal., 428 F.3d 1175, 1179 (9th Cir. 2005)

(citation omitted).

_____

        [4]  Plaintiff did not identify the subsections pursuant to
which he requests relief, but it appears that § 455(a) and
(b)(1)-(2) are at issue.

4

Motions to disqualify must be timely filed. <u>Davies v.</u>
<u>C.I.R.</u>, 68 F.3d 1129, 1131 (9th Cir. 1995); <u>Preston v. United</u>
<u>States</u>, 923 F.2d 731, 733 (9th Cir. 1991) ("[A] motion to
disqualify or recuse a judge under . . . § 455 must be made in a
timely fashion."). That is, "recusal motions should be filed
with reasonable promptness after the ground for such a motion is
ascertained." <u>Preston</u>, 923 F.2d at 733. In the absence of such
a requirement, there would be "increased instances of wasted
judicial time and resources and a heightened risk that litigants
would use recusal motions for strategic purposes." <u>Id.</u> Allowing
untimely recusal motions "would encourage parties to withhold
recusal motions, pending a resolution of their dispute on the
merits, and then if necessary invoke section 455 in order to get
a second bite at the apple." <u>E. & J. Gallo Winery v. Gallo</u>
<u>Cattle Co.</u>, 967 F.2d 1280, 1295 (9th Cir. 1992).

    1.   <u>Section 455(a)</u>

The Court employs an objective test in analyzing
disqualification under § 455(a), which asks whether "'a
reasonable person with knowledge of all the facts would conclude
that [the judge's] impartiality might reasonably be questioned.'"
<u>Perry v. Schwarzenegger</u>, 630 F.3d 909, 911 (9th Cir. 2011)
(citation omitted); <u>Clemens</u>, 428 F.3d at 1178. Central to that
inquiry is "whether a reasonable person perceives a significant
risk that the judge will resolve the case on a basis other than

the merits." Clemens, 428 F.3d at 1178. In this context, the "reasonable person" means a "'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" Id. (citation omitted). A reasonable third-party observer understands all of the relevant facts and has examined the record and law. United States v. Holland, 519 F.3d 909, 914 (9th Cir. 2008). Recusal is not mandated on the "merest unsubstantiated suggestion of personal bias or prejudice." Id. (citation omitted).

Questions concerning a "judge's impartiality must stem from 'extrajudicial' factors . . . that is, from sources other than the judicial proceedings at hand." Clemens, 428 F.3d at 1178 (quoting Liteky v. United States, 510 U.S. 540, 554 (1994); Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 885 (9th Cir. 1991) (citation omitted)). Put differently, the basis for recusal must be "something other than rulings, opinions formed or statements made by the judge during the course of trial." Holland, 519 F.3d at 914 (citing Liteky, 510 U.S. at 554-56). Therefore, a "judge's conduct during the proceedings should not, except in the 'rarest of circumstances'[] form the sole basis for recusal under § 455(a)." Id. (quoting Liteky, 510 U.S. at 555).

In analyzing § 455(a) claims, which are fact driven, the Court "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an

independent examination of the unique facts and circumstances of

the particular claim at issue."  Clemens, 428 F.3d at 1178

(citation omitted).  The following circumstances do not

ordinarily mandate a § 455(a) recusal:

> (1) Rumor, speculation, beliefs, conclusions,
> innuendo, suspicion, opinion, and similar
> non-factual matters; (2) the mere fact that a
> judge has previously expressed an opinion on a
> point of law or has expressed a dedication to
> upholding the law or a determination to impose
> severe punishment within the limits of the law
> upon those found guilty of a particular offense;
> (3) prior rulings in the proceeding, or another
> proceeding, solely because they were adverse; (4)
> mere familiarity with the defendant(s), or the
> type of charge, or kind of defense presented; (5)
> baseless personal attacks on or suits against the
> judge by a party; (6) reporters' personal opinions
> or characterizations appearing in the media, media
> notoriety, and reports in the media purporting to
> be factual, such as quotes attributed to the judge
> or others, but which are in fact false or
> materially inaccurate or misleading; and (7)
> threats or other attempts to intimidate the judge.

Id. at 1178–79 (citation omitted); Sivak v. Hardison, 658 F.3d

898, 926 (9th Cir. 2011) ("'[R]umor, speculation, beliefs,

conclusions, innuendo, suspicion, opinion, and similar

non-factual matters' do not form the basis of a successful

recusal motion.") (citation omitted).

    2.   Section 455(b)

      Section 455(b) provides specific examples of situations

"in which a judge's impartiality might be reasonably questioned

pursuant to section 455(a)."  Cf. United States v. Sibla, 624

F.2d 864, 867 (9th Cir. 1980) (citation omitted).  However,

unlike § 455(a), which concerns the appearance of bias, § 455(b) "covers situations in which an *actual* conflict of interest exists, even if there is no appearance of one." Herrington v. Sonoma Cty., 834 F.2d 1488, 1502 (9th Cir. 1987). It requires the judge to apply a subjective standard in determining "whether he can be truly impartial when trying the case." Holland, 519 F.3d at 915. This test for actual bias "is highly personal in nature and requires each judge in such a situation to set aside emotion and thoughtfully examine his ability to impartially administer justice without respect to persons." Id. (citation and internal quotations omitted). The "extrajudicial source" limitation also applies to § 455(b)(1). Liteky, 510 U.S. at 553.

B.    Plaintiff's Motion is Timely

As a threshold matter, the Court considers whether or not Plaintiff filed this Motion with reasonable promptness after the grounds for the Motion were ascertained. Defendants contend that Plaintiff strategically filed this Motion to delay his deposition and evade discovery obligations. Although the Court agrees that this Motion appears to be one of multiple tactics utilized by Plaintiff to shirk his discovery obligations, the timeliness inquiry focuses on the lapse between the filing of the recusal motion and the acquisition of information concerning the basis of the request.

Here, the undersigned's actions with which Plaintiff

takes issue occurred as early as November 1, 2017, and as

recently as December 15, 2017.  The Motion was therefore filed

within three months of the date Plaintiff ascertained at least

one basis for seeking recusal.  Given Plaintiff's *pro se* status,

and the fact that the most recent allegations took place

approximately one-and-a-half months before Plaintiff filed this

Motion, the Court finds that the Motion was timely filed.

C.   Plaintiff Fails to Present a Basis for Recusal

Plaintiff's memorandum is largely irrelevant, with

lengthy narratives having no bearing on the requested relief.

As best the Court can discern, Plaintiff asks for recusal of the

undersigned on two grounds:  1) the undersigned's former

affiliation with Watanabe Ing, the firm representing Defendants

and 2) the undersigned's conduct during proceedings.  The Court

addresses each in turn.

1.   Former Affiliation With Kobayashi, Watanabe, Sugita & Kawashima

Plaintiff erroneously claims that the undersigned has

previously worked at Watanabe Ing.  He believes that because the

undersigned was a partner at the law firm formerly known as

Kobayashi, Watanabe, Sugita & Kawashima, a conflict exists "that

should be of great concern."  Section 455(b)(2) requires the

undersigned to recuse "[w]here in private practice he served as

lawyer in the matter in controversy, or a lawyer with whom he

9

previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." 28 U.S.C. § 455(b)(2). The undersigned never worked at Watanabe Ing and has had no affiliation with Kobayashi, Watanabe, Sugita & Kawashima since joining the state bench in 1993, some <u>25 years</u> ago. Since then, Kobayashi, Watanabe, Sugita & Kawashima underwent multiple changes; it became Watanabe Ing & Kawashima and is now Watanabe Ing. Thus, the firm at which the undersigned was an associate and a partner no longer exists.

More importantly, the undersigned never served as a lawyer in this matter, nor has a lawyer with whom he previously practiced law <u>served during such association</u> as a lawyer concerning the matter. Finally, the attenuated connection that Plaintiff complains of causes no risk of prejudice, as the undersigned can and has been impartial in administering justice. Plaintiff has not provided any evidence, beyond mere conjecture, that actual bias has or would result from the undersigned having worked at a now defunct law firm that split and in part evolved into Watanabe Ing. Accordingly, § 455(b)(2) does not provide a basis for recusal.

2. <u>Conduct During Proceedings</u>

Plaintiff raises multiple allegations regarding the undersigned's conduct during proceedings, which he claims

10

evidences bias and favoritism toward Defendants.  The

accusations, all of which are highly speculative, reveal

Plaintiff's undue suspicion:

- During the Pre-Trial conference, Jugde [sic] Chang .
  . . was sitting close to Ross Shyniyama [sic] . . .
  a Watanabe lawyer, and at previous occasions while
  entering the court he was sitting close to another
  employee of the same company Ronald Y.K. Long [sic].
  It appeared that their interaction was of an overly
  friendly nature, undermining professionalism in this
  case and promoting bias.

- The Judge made several statements in order to
  convince me to settle my case for $5,000 **on top of
  the additional $5,000 already owned [sic] to me by
  the Watanabe firm**, with comments being presented
  such as "the money is gone', [sic] then the Judge
  visually waving hands to demonstrate their
  statement.  During the Pre-Trial motion, the Judge
  repeatedly demonstrated impatience, being overly
  defensive, irritated and using sarcasm as a means to
  diminish me.  These behaviors were highly
  inappropriate and prejudicial.  The Judge unjustly
  disregarded my responses and by their [sic] comments
  left me to feel psychologically coerced to accept a
  $10,000.00 settlement in spite of the evidence
  presented in my favor.

- <u>Ross and the Watanabe company are therefore
  retaining the funds that I am already entitled to,
  seeking to diminish me in a court setting to accept
  an existing award as a compensation, something that
  quite frankly should be illegal per se.</u>

  **The Judge didn't make any comment on this illegal
  practice and behavior.**

- The Judge explained that the jury will be local and
  he said that locals won't be happy to hear about my
  lawsuit as it would be upsetting to the local
  population.  This was again a diminishing and
  inappropriate comment, as the local population
  should quite frankly be very concerned with crimes
  being committed against innocent individuals and in
  support of ending such behaviors given that it would

11

place safety concerns on all community members when allowing the perpetrator to re-offend repeatedly. By the manner the Judge addressed this matter, I was led to believe that he sympathized with local racism against the non-Asian and Caucasian population, something being far from the beliefs of the Constitution that America was built on (equality and legal rights, Fourteenth Amendment), hence leading to the Judge breaching with his own oath to his profession.

- [T]he Judge was making assumptions as to the jury's responses on the matter to coerce me into making a decision detrimental to my person. It was not, with all due respect, the Judge's place to suggest how the jury would respond and in this particular case, going to the extent to suggest that the locals would be upset about a lawsuit of which grounds are assault and emotional abuse towards an innocent person. It is very odd and even more so to assume that a fair jury would determine such an unjust event to be just, promoting crime in our society.

- As per the lengths of the psychological coercion observed I nearly accepted a deal based on the Judge's charisma, life experience, and background which led me to wrongly consider that perhaps I should trust their counsel. I stopped myself in time as I noticed how the Judge and Ross repeatedly conversed with one another and looked each other in the eyes when I consistently lowered my offer to settle in order to comply with the federal regulation. The Judge was persuasive when saying that he had been a Judge for 22 years and a lawyer prior to that to see if I would accept the offer. Although I trust this information to be correct, it was with due respect not the Judge's place and nor was this event in agreement with the code, as coercing me into making a detrimental decision to my own wellbeing [sic] based on the Judge's background ultimately would be a major loss to me.

- It was of great concern and of personal distress to me to further witness the Judge claim how **Mr. Carl Zuttermeister . . . had only attacked me at one occasion**. <u>Given the elaboration in my lawsuit it appeared that the Judge had not even read this document in which I reported a long list of</u>

12

incidents, further leading to wonder how many times a person needs to be assaulted and abused before the assault can be claimed as a crime and the perpetrator faces consequences for the wrongful termination and the months of racial discrimination.

- The Judge demonstrated that he abused his authority also taking me twice into a separate room, telling me that **Watanabe and SmarteCarte don't have money to pay me** the requested amount as those funds are already gone to pay Watanabe and their defendant's [sic] legal fees.

- It is very peculiar and another matter of great concern that the Judge would go against the federal agencies' ruling given such agencies are clearly specialized and highly experienced in cases such as mine, it appearing as if the Judge literally disregarded these ruling and any counsel from the federal agencies.

- I repeatedly observed how the Judge would converse quietly and privately with the other party's [sic] lawyers, remaining in their vicinity, it appearing to me as they were being favored versus me given that I stood alone lacking the affordability of legal representation.

- I found the Judge's statement to be highly disrespectful given the physical and emotional abuse that I had suffered. Further, as I am the victim in this case, both the Judge and Watanabe should consider ceasing to diminish me as an individual.

- Additionally, last year the Judge said the trial couldn't be extended but surprisingly at the most recent hearing he claimed it to be my fault with both the Judge and Watanabe accusing me of not being clear. If this was the case, it should have been mentioned before and advised in writing, not as a blaming element during a court hearing.

- On December 15, 2017, the Judge asked to extend the trial for another 6 months. He was unaware that he should give a default judgment given that Carl was a fugitive until that day. This is yet another matter of great concern to me.

- The Judge asked Ross for Carl's age (59) and asked me to sympathize with Carl's age asking me if I received medical treatment. Gary and Carl chased me, followed me and struck me down several times forcibly removing my Federal Customer Board Access clearance and my FAA badge . . . Also interestingly, Carl's age did not stop him from chasing and striking a man half his age, yet his age should be considered in terms of prosecution. The latter emphasized the bias that the Judge provided in this hearing towards my case.

- The judge therefore asked me if I have medical bills to justify my monetary request, diminishing my case and persona showing inability to be impartial and not willing to apply federal and state laws to this case. Not [sic] questions were asked to Ross or Watanabe leaving not [sic] other logical conclusion that [sic] the judge is not fit to arbitrate this case.

- **The Judge never responded to my concerns where I considered filing a misconduct against Watanabe** <u>leaving the door open to further misconduct confusing statements and leaving the possibility to confuse the jury sympathizing for my perpetrators</u>.

Mot. at 3-12 (emphases in original).

The foregoing allegations speak for themselves and do not warrant any meaningful explanation or discussion. The Court simply notes that a reasonable person with knowledge of all the facts would not question the undersigned's impartiality. Plaintiff's distorted perceptions are not grounded in fact or law, particularly where, as here, he presents a revisionist recollection of the proceedings. As earlier noted, "'[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters' do not form the basis of a successful recusal motion." <u>Sivak</u>, 658 F.3d at 926. This Motion

14

rests exclusively on Plaintiff's suspicion and speculation.

Questions regarding impartiality must emanate from extrajudicial factors.  All of the allegations presented here concern the undersigned's conduct during proceedings.  However, the basis for recusal must be "something other than rulings, opinions formed or statements made by the judge during the course of trial."  Holland, 519 F.3d at 914 (citing Liteky, 510 U.S. at 554-56).  None of the purported instances of improper conduct during proceedings, which are in any event gross mischaracterizations by Plaintiff, would elevate this case to the "rarest of circumstances" warranting recusal.  The knowing looks and secret discussions between the undersigned and defense counsel are fabrications.  That Plaintiff might have perceived the undersigned's interactions with defense counsel to be improper does not make them so.

During settlement conferences, it is common practice for the undersigned to engage in separate discussions with the parties, and Plaintiff himself concedes that the undersigned had a separate discussion with him.  It is also typical for the undersigned to discuss available monetary resources and the strengths and weakness of claims and defenses with the parties. These practices were employed during the November 1, 2017 settlement conference.  Neither party was provided any advantage and no reasonable person with knowledge of all the facts would

reasonably question the undersigned's impartiality.  Actual bias
is lacking as well because the Court has been and will continue
to be truly impartial.

Plaintiff claims that the undersigned was defensive and
sarcastic at a hearing, and has been accusatory toward Plaintiff,
but the record reflects otherwise.  Transcripts from the
proceedings would reveal that Plaintiff has always been treated
respectfully, with the undersigned consulting Plaintiff about
future dates and deadlines and going so far as to explain the
discovery process to Plaintiff.  This case has been pending since
April 22, 2016, a period of almost two years, with limited
advancement.  The Court has accommodated Plaintiff's requests for
continuances of deadlines, notwithstanding his attempts to delay
the discovery process and interfere with the orderly progression
of this case.

Finally, accusations that the undersigned has failed to
take certain action - addressing obstruction of justice,
"giv[ing] a default judgment", responding to concerns about
"filing a misconduct against Watanabe" - are unfounded.  The
Court need not act *sua sponte* on Plaintiff's behalf, nor act upon
verbal inquiries/requests at hearings or conferences,
particularly when such inquiries/requests have no legal basis.
Plaintiff's misunderstanding of the law and the remedies to which
he is entitled should not be imputed to the Court as a failure to

16

act.  Unless a situation requiring Court involvement presents itself, the Court is not required to take action, and it would be improper for the Court to do so.

For the reasons set forth above, the Court concludes that the undersigned need not recuse himself under § 455(a) or (b).

CONCLUSION

In accordance with the foregoing, the Court HEREBY DENIES Plaintiff's Motion to Recuse, filed January 26, 2018.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, March 22, 2018.



    Kevin S.C. Chang
    United States Magistrate Judge

CIVIL NO. 16-00192 LEK-KSC; DI GIUSTINO V. SMARTECARTE, INC., ET AL.; ORDER DENYING PLAINTIFF'S MOTION TO RECUSE